UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-60093/23-CR-20112-SMITH

UNITED STATES OF AMERICA

vs.

RICARDO LOPEZ-DURAN,

Defendant.
_____/

## STIPULATED FACTUAL PROFFER

Should this case have proceeded to trial, the United States would be able to prove the following beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, **RICARDO LOPEZ-DURAN,** are sufficient to prove guilt for Count One of the Information which charges the Defendant with a violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Generally, **LOPEZ-DURAN** used his company FRACOL Tech International, LLC ("FRACOL"), a company located in Weston, Florida, as a front to launder drug proceeds out of the United States and into Colombia. In July and August 2018, **LOPEZ-DURAN** had multiple conversations with an undercover agent ("UC-1") working for the United States Drug Enforcement Administration ("DEA"). At that time, **LOPEZ-DURAN** had received the proceeds of drug trafficking into his FRACOL account at the request of a Colombian money broker and coordinated with UC-1 regarding where to send the money and how to avoid bank scrutiny of the transaction. Following those conversations, **LOPEZ-DURAN** told UC-1 that he used bank accounts in the name of FRACOL to launder drug proceeds out of the United States and that he used FRACOL as

a front to conduct trade-based laundering tied to the so-called sale of cell phones. During that conversation, **LOPEZ-DURAN** suggested multiple ways that UC-1 could use FRACOL to launder drug proceeds in the future and be paid out in Colombia.

On January 29, 2019, UC-1 contacted **LOPEZ-DURAN**. UC-1 told **LOPEZ-DURAN** that he had a client that was about to "crown" with 300 "things" (shipment of 300 packages of drugs) that would generate about 750 (7,500,000 pesos) but wanted to be paid out in Cali, Colombia. **LOPEZ-DURAN** stated that he would pay at 690 (2,690 COP per 1 USD). On February 21, 2019, UC-1 contacted **LOPEZ-DURAN** and requested a price to pay $75,000 in Bogota in pesos. **LOPEZ-DURAN** responded 740 (2,740 per USD). UC-1 said that was fine and asked for both a local Colombian number and the US-based account to which UC-1 should send the money. UC-1 also asked **LOPEZ-DURAN** for a bill to cover the transaction. **LOPEZ-DURAN** stated that he could do the bill to show 1200 pieces of Samsung J2 Prime with 16B with additional memory of 16GB at $84. On February 22, 2019, **LOPEZ-DURAN** sent the local account information for FRACOL. Later that day, UC-1 executed a wire transfer in the amount of $75,000 from the UC Account in Boston to the FRACOL account at PNC Bank. On February 25, 2019, UC-1 passed a photo of a Colombian peso with a serial number to be used as a token, a phone number, and the verbal code "mario de parte del negro."

On February 26, 2019, **LOPEZ-DURAN** called the phone number provided by UC-1 and spoke with a Colombia-based UC. Upon request, the Colombia-based UC confirmed the last four digits of the token provided by UC-1 to **LOPEZ-DURAN**. **LOPEZ-DURAN** and the Colombia-based UC agreed to meet the following day. On February 27, 2019, the Colombia-based UC and **LOPEZ-DURAN** agreed to meet at a shopping mall in Colombia. At the meeting, **LOPEZ-**

2

**DURAN** delivered multiple bundles of Colombian pesos to the Colombia-based UC. After the meeting was over, the Colombia-based UC provided the money to law enforcement agents. The total amount after exchange and fees was $65,760.

Additionally, in or around July 2019, **LOPEZ-DURAN** identified himself as a money launderer of Colombian cocaine proceeds to a confidential source ("CS") working with the United States Drug Enforcement Administration ("DEA"). **LOPEZ-DURAN** told the CS that he used bank accounts in the name of FRACOL to launder drug proceeds out of the United States and that he used FRACOL as a front to conduct trade-based laundering tied to the so-called sale of cell phones.

More specifically, on or about July 18, 2019, **LOPEZ-DURAN** delivered the approximate sum of $200,010 in United States Currency to a CS in the Southern District of Florida and described the currency to the CS as proceeds from the sale of cocaine that arrived in the Southern District of Florida from the Dominican Republic. **LOPEZ-DURAN** told the CS that he intended to use FRACOL to launder and move the proceeds out of the United States and into Colombia. Subsequent to the cash-delivery to the CS, **LOPEZ-DURAN** directed the CS to wire a portion ($194,000) of the $200,010 to a FRACOL business banking account located at PNC Bank and to make an additional wire in the approximate sum of $5,000 to another account in the name of Company 1. The owners of Company 1 are individuals known by law enforcement to be in the business of money laundering. The Defendant admits that he knowingly and willfully directed the initiation of the wires for the purpose of concealing and disguising the fact that the funds comprising these financial transactions was proceeds from the unlawful manufacture, importation, and sale of controlled substances punishable under the laws of the United States.

All told, **LOPEZ-DURAN** laundered between $1.5 million and $3.5 million in drug proceeds during his involvement in the conspiracy and transactions described above.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 4/6/2023    By: _____
                     per YARA DODIN
                     ASSISTANT UNITED STATES ATTORNEY

Date: 4/6/2023    By: _____
                     HELAINE BATOFF
                     ATTORNEY FOR DEFENDANT

Date: 4/06/23     By: _____
                     RICARDO LOPEZ-DURAN
                     DEFENDANT